**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RISTJAN TALV,<br><br>*Petitioner*,<br><br>v.<br><br>LUIS SOTO, *et al.*,<br><br>*Respondents*. | Civil Action No. 26-cv-09447<br><br>**OPINION** |

**THIS MATTER** comes before the Court upon the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 of Ristjan Talv ("Petition"), challenging the legality of his detention by United States Immigration and Customs Enforcement ("ICE"). (ECF Nos. 1, 4.) For the reasons set forth below, the Court concludes that Respondents have failed to establish a lawful statutory basis for Petitioner's continued detention. The Petition is therefore **GRANTED** and Petitioner shall be **RELEASED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner entered the United States on February 1, 2016, pursuant to the Visa Waiver Program ("VWP"). (*See* ECF No. 4 ¶ 1; ECF No. 9 at 1; ECF No. 12 at 1.) On May 2, 2016, he filed an application for asylum with U.S. Citizenship and Immigration Services ("USCIS"). (ECF No. 4 ¶ 2; *see* ECF No. 9 at 1.) According to the record before the Court, that application remains pending. (*See* ECF Nos. 4, 9, 12.) Petitioner has no criminal history and possesses valid employment authorization. (ECF No. 9-1 at 2; ECF No. 12 at 1.) Respondents have not disputed those representations. (*See* ECF No. 9.)

On July 24, 2026, ICE detained Petitioner at Newark Liberty International Airport. (ECF No. 4 ¶ 2; ECF No. 9 at 1; ECF No. 12 at 1.) Respondents state that, on that date, ICE served Petitioner with a Notice of Intent to Issue a Final Administrative Removal Order, a Final Administrative Removal Order ("FARO"), and a Notice to Alien Ordered Removed/Departure Verification. (ECF No. 9 at 1; *see* ECF Nos. 9-3–9-5.)

The Notice of Intent identified Petitioner as a VWP overstay and advised him that, "[i]f you fear persecution in your country of nationality . . . you may apply for asylum." (ECF No. 9-3; *see* ECF No. 12 at 1.) The Government acknowledges that Petitioner requested asylum. (ECF No. 9 at 1.) The FARO states that the order is "final and not subject to administrative appeal." (ECF No. 9-4 at 1.) It further provides, however, that the Department of Homeland Security ("DHS") will proceed with removal unless, among other circumstances, "an application for asylum, withholding or deferral of removal is pending before the [immigration court]." (*Id.*)

The record does not indicate that DHS issued Petitioner a Form I-863, Notice of Referral to Immigration Judge, or otherwise initiated an asylum-only proceeding concerning his asylum claim. (*See* ECF No. 9-4 at 2; *see also* ECF No. 12 at 2.) Nor does Respondents' submission contend that an immigration judge has adjudicated Petitioner's asylum, withholding, or deferral claims. (*See* ECF No. 9.) Rather, Respondents maintain that the FARO issued on July 24, 2026, was itself an administratively final order of removal and therefore triggered detention under § 1231. (ECF No. 9 at 2.)

Petitioner has remained detained at the Delaney Hall Detention Facility since July 24, 2026. (ECF No. 4 ¶ 2.) On August 17, 2026, the Court directed Respondents to release Petitioner within twenty-four hours if he had no criminal history and was not subject to a final order of removal, or otherwise to identify his criminal history, final-order status, and the statutory authority for his

continued detention. (ECF No. 7.) Respondents thereafter asserted that Petitioner is subject to mandatory detention under § 1187(c)(2)(E) and, alternatively, § 1231(a)(2). (ECF No. 9 at 1–2.) Petitioner filed a reply on August 24, 2026. (ECF No. 12.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241(c)(3), a federal court may grant habeas relief when a person is "in custody in violation of the Constitution or laws or treaties of the United States." The Supreme Court has recognized that § 2241 provides a vehicle for challenging the legality of immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

The Court's inquiry is limited to whether the Government has demonstrated statutory authority to maintain Petitioner in physical custody. The Court does not address the merits of Petitioner's asylum claim or otherwise review the validity of his underlying immigration status.

## III. DISCUSSION

### a. Section 1187(c)(2)(E) Does Not Authorize Petitioner's Detention

The Government first contends that Petitioner is subject to mandatory detention under 8 U.S.C. § 1187(c)(2)(E) because he violated the VWP. (ECF No. 9 at 1.) The statutory text does not support that contention.

Section 1187 governs the VWP. Among other things, it provides that an alien admitted under the VWP waives the right to contest removal "other than on the basis of an application for asylum." 8 U.S.C. § 1187(b)(2). Section 1187(c)(2)(E), which addresses the "Repatriation of aliens," requires participating countries to accept the return of certain VWP violators. But nothing in that subsection affirmatively authorizes DHS to arrest or detain a VWP participant.

To the contrary, Congress expressly provided that § 1187(c)(2)(E) creates no duty for the

United States and no right for an alien "with respect to removal or release" and creates no cause of action to compel the "release, removal, or consideration for release or removal" of an alien. 8 U.S.C. § 1187(c)(2)(E). The provision therefore cannot reasonably be read as an affirmative grant of detention authority.

The Government relies on *Matter of A-W-*, 25 I. & N. Dec. 45, 47–48 (BIA 2009), in support of its position that § 1187(c)(2)(E), rather than § 1226, provides the detention authority applicable to a VWP violator. (ECF No. 9 at 1.) But several courts in this District have rejected that interpretation. *See Sutaj v. Rodriguez*, No. 16-5092, 2017 WL 66386, at *2 (D.N.J. Jan. 5, 2017); *Szentkiralyi v. Ahrendt*, No. 17-1889, 2017 WL 3477739, at *2–3 (D.N.J. Aug. 14, 2017); *Gjergj G. v. Edwards*, No. 19-5059, 2019 WL 1254561, at *2 (D.N.J. Mar. 18, 2019); *Ochoa Molina v. Soto*, No. 25-16880, 2025 WL 3281820, at *2–3 (D.N.J. Nov. 25, 2025).

The Court finds those decisions persuasive. Section 1226(a), for example, expressly provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Congress thus expressly addressed detention elsewhere in the Immigration and Nationality Act ("INA") but did not include comparable language in § 1187(c)(2)(E).

The Court therefore concludes that § 1187(c)(2)(E) does not itself authorize Petitioner's detention.

**b. Respondents Have Not Established That Petitioner Is Subject to § 1231 Detention**

The Government alternatively invokes § 1231(a)(2), which requires detention "[d]uring the removal period." 8 U.S.C. § 1231(a)(2). Under § 1231(a)(1)(B)(i), the removal period begins, as relevant here, on "the date the order of removal becomes administratively final."

The Government contends that the removal period commenced on July 24, 2026, when DHS served Petitioner with the FARO. (ECF No. 9 at 2.) But the Government's argument assumes the very proposition it must establish: that the FARO was administratively final notwithstanding Petitioner's unresolved asylum claim.

The VWP expressly preserves a non-citizen's ability to seek asylum notwithstanding the waiver of the right to contest removal. 8 U.S.C. § 1187(b)(2). The implementing regulations require that a VWP entrant who applies for asylum be issued a Form I-863 and referred to an immigration judge for an asylum-only proceeding. 8 C.F.R. § 217.4(b)(1); *see also* 8 C.F.R. § 208.2(c)(1).

The Third Circuit addressed the relationship between VWP removal and asylum proceedings in *Shehu v. Attorney General*, 482 F.3d 652 (3d Cir. 2007). There, the Court explained that VWP participants who seek asylum receive "asylum-only" hearings. *Id.* at 655. The Court further held that "a denial of a VWP applicant's petition for asylum, withholding of removal, and relief under the [Convention Against Torture] constitutes 'a final order of removal'" because, following that denial, "the alien is entitled to no further process before deportation." *Id.* at 656.

The significance of *Shehu* is not merely semantic. The Third Circuit identified the adjudication of the VWP entrant's asylum-related claims as the point at which the alien becomes entitled to no further process before removal. Here, by contrast, Respondents do not contend that Petitioner's asylum claim has been denied. They do not contend that an immigration judge has adjudicated his asylum, withholding, or deferral claims. And they do not contend that DHS issued the Form I-863 contemplated by § 217.4(b)(1).

Instead, the record establishes that Petitioner invoked the very statutory exception through which a VWP entrant may contest removal: an application for asylum. 8 U.S.C. § 1187(b)(2) (*See*

ECF No. 9 at 1.) Yet Respondents maintain that Petitioner is already subject to a final order of removal without identifying any adjudication of that asylum claim.

The Government's own exhibit underscores the problem. Although the FARO states that it is "final and not subject to administrative appeal," it also provides that DHS will proceed with removal unless, among other circumstances, an application for asylum, withholding, or deferral of removal is pending before the immigration court. (ECF No. 9-4 at 1.) Respondents have not explained how that provision applies where Petitioner has an asylum application pending with USCIS but DHS has apparently not initiated the asylum-only proceeding required by § 217.4(b)(1).

The Court therefore concludes that Respondents have failed to establish that Petitioner's July 24, 2026 FARO is an administratively final order of removal for purposes of § 1231(a)(1)(B)(i).

**c. Because the Removal Period Has Not Been Shown To Have Commenced, § 1231(a)(2) Does Not Authorize Petitioner's Detention**

Section 1231(a)(2)'s mandatory detention provision applies only "[d]uring the removal period." 8 U.S.C. § 1231(a)(2). Because Respondents have not established that Petitioner's order became administratively final, they have not established that the § 1231 removal period commenced.

Respondents' reliance on *Zadvydas v. Davis*, 533 U.S. 678 (2001), therefore does not resolve the issue. (ECF No. 9 at 2.) *Zadvydas* concerned the constitutional limitations on detention under § 1231(a)(6) after an order of removal has become final. 533 U.S. at 682–84. The Supreme Court explained that detention during the statutory removal period is subject to the INA's framework and that post-removal-period detention raises distinct constitutional concerns. *Id.* at 688–99.

Here, the threshold question is whether Petitioner has entered the § 1231 removal period at all. The Government cannot answer that question merely by pointing to the date DHS issued a document denominated a Final Administrative Removal Order.

Nor does the fact that Petitioner has been detained for only twenty-six days establish the lawfulness of his detention. (ECF No. 9 at 2.) The Government's cited cases applying the six-month presumption of reasonableness presuppose that § 1231 governs the detainee's custody. *See Zadvydas*, 533 U.S. at 701. They do not establish the antecedent proposition that a person whose removal order has not become administratively final may be detained under § 1231.

Accordingly, the Court rejects Respondents' contention that Petitioner's § 1231 challenge is premature.

**d. The Government Has Failed To Identify a Lawful Basis for Petitioner's Continued Detention**

The Court recognizes that the INA contains other detention provisions. Most notably, § 1226(a) authorizes arrest and detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Several courts in this District have concluded that § 1226(a), rather than § 1187(c)(2)(E), supplies the detention authority for VWP entrants whose removal remains pending. *See Sutaj*, 2017 WL 66386, at *2–3; *Szentkiralyi*, 2017 WL 3477739, at *2–3; *Gjergj G.*, 2019 WL 1254567, at *2; *Ochoa Molina*, 2025 WL 3281820, at *2–3.

But Respondents have not invoked § 1226(a) as the statutory basis for Petitioner's present detention. To the contrary, in response to the Court's express direction to identify the statutory authority under which Petitioner remains detained (ECF No. 7), Respondents identified § 1187(c)(2)(E) and, alternatively, § 1231(a)(2)(A) (ECF No. 9 at 1–2). Neither provision authorizes Petitioner's detention on the record before the Court.

The Court declines to construct a new detention theory for the Government that Respondents themselves have not asserted or established. Habeas relief turns on whether the detention challenged by the petitioner is authorized by law. *See* 28 U.S.C. § 2241(c)(3).

The distinction is particularly important here. The Government's position is not merely that Petitioner is detainable under some provision of the INA. It affirmatively maintains that Petitioner is already subject to a final order of removal and therefore may be detained under § 1231. (ECF No. 9 at 2.) But the record does not support that proposition.

The Government cannot avoid the statutory and regulatory requirements governing VWP asylum claims by treating its own administrative designation as conclusive of finality. Where Congress has expressly preserved an asylum exception to the VWP waiver and the regulations require an asylum-only proceeding upon invocation of that exception, the Government must demonstrate that the process has reached the point at which the non-citizen is no longer entitled to further proceedings before removal. *See Shehu*, 482 F.3d at 655–56; 8 U.S.C. § 1187(b)(2); 8 C.F.R. § 217.4(b)(1).

It has not done so.

**e. Continued Detention Under These Circumstances Violates the Fifth Amendment**

The statutory defect is sufficient to warrant habeas relief. The circumstances of Petitioner's detention also implicate the Due Process Clause of the Fifth Amendment.

Immigration detention is civil, not punitive. *Zadvydas*, 533 U.S. at 690. Accordingly, detention must bear a reasonable relationship to its immigration purposes. *Id.* at 690–91. The Third Circuit has likewise emphasized that immigration detention must remain connected to legitimate governmental objectives and cannot become constitutionally unreasonable merely

because the Government possesses authority to initiate removal proceedings. *See Diop v. ICE/Homeland Security*, 656 F.3d 221, 231–35 (3d Cir. 2011).

The record here presents an unusual circumstance. Petitioner has represented that his asylum application has remained pending since 2016. (ECF No. 12 at 1.) Respondents do not dispute that representation or identify any adjudication of his asylum claim. Yet after arresting Petitioner on July 24, 2026, Respondents have continued to confine him while maintaining that he is immediately removable under a final order. (ECF No. 9 at 2.)

At the same time, Respondents have not established that they initiated the asylum-only proceeding required by the VWP regulations. (ECF No. 12 at 2.)

The result is a detention that, on the present record, is untethered from any demonstrated statutory authority. The Government has not established that § 1187 authorizes the detention. It has not established that § 1231 applies. And it has not identified another statutory provision that presently authorizes Petitioner's continued confinement.

The Fifth Amendment does not permit the Government to deprive a person of physical liberty without lawful authority. *See Zadvydas*, 533 U.S. at 690. Petitioner's continued detention therefore cannot stand.

**f. Remedy**

Respondents have failed to establish a statutory basis for Petitioner's present detention. (*See* ECF No. 9.) The Court therefore will not order a bond hearing under a detention provision that Respondents have neither invoked nor established as applicable.

Nor is release inconsistent with the Government's authority to enforce the immigration laws. The Court's ruling does not invalidate Petitioner's immigration status, adjudicate his asylum application, or prohibit the Government from pursuing proceedings authorized by law. It simply

requires the Government to refrain from continuing Petitioner's physical detention without lawful statutory authority.

The appropriate remedy is therefore release from custody.

Upon release, the Government remains free to pursue Petitioner's immigration proceedings in accordance with the INA and applicable regulations, including the asylum-only process contemplated by 8 C.F.R. § 217.4(b)(1). Nothing in this Opinion prevents the Government from taking lawful immigration-enforcement action should an appropriate statutory basis for detention subsequently arise.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Respondents have failed to establish that Petitioner's detention is authorized under either statutory provision they identify. Accordingly, Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF Nos. 1, 4) is **GRANTED**. Respondents shall **RELEASE** Petitioner from custody within twenty-four (24) hours of entry of the accompanying Order.

Petitioner's release shall occur without additional conditions of confinement imposed pursuant to the detention authorities rejected herein. The Government may continue to pursue Petitioner's immigration proceedings and may take such further action as is authorized by law.

An appropriate Order follows.

**Karen M. Williams**
**United States District Judge**

Dated: 9/3/2026